RAMSEY GROUP, INC., a North
Carolina corporation,
Plaintiff,

v.

EGS INTERNATIONAL, INC., d/b/a Enviroguard; Douglas Frazier, an individual;
and Kenneth Cotton, an individual, Defendants.

Civ. No. 1:02CV77.

United States District Court,
W.D. North Carolina,
Asheville Division.

July 25, 2002.

J. Derel Monteith, Jr., Carter & Schnedler, Asheville, NC, for plaintiff.

Philip J. Smith, W. Carleton Metcalf, Van Winkle, Buck, Wall, Starnes & Davis, P.A., Asheville, NC, William A. Davis, Simeon Schopf, Mintz, Levin, Cohn, Ferris, Glvosky and Popeo, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

THIS MATTER is before the Court on the Plaintiff's motions for leave to file a supplemental amended complaint and for a preliminary injunction. The Defendants have responded. For the reasons stated herein, Plaintiff's motion for leave to file a supplemental amended complaint is granted and this action is declared to have been filed prior to *Expo Power Systems, Inc. v. Ramsey Group, Inc.*, No. 02–CV–5041 (C.D.Cal.).

## I. PROCEDURAL HISTORY

On March 26, 2002, Plaintiff Ramsey Group, Inc. (the Ramsey Group) initiated this

action seeking declaratory judgments that it has not infringed United States Patent No. 6,308,728 B1 ('728) for a SPILL CONTAINMENT SYSTEM AND METHOD and that the patent is invalid. The complaint also asserted a claim for unfair trade practices pursuant to N.C. Gen.Stat. § 75–1.1. The Defendants are EGS International, Inc., which does business under the name of EnviroGuard (EnviroGuard), Douglas Frazier (Frazier) who invented the '728 patent and is the majority shareholder of EnviroGuard, and Kenneth Cotton (Cotton) who is the president of EnviroGuard. According to the complaint, "Ramsey Group and Defendants are competitors in the field of designing, manufacturing, and selling products for containing spills of hazardous material from stationary industrial and commercial batteries such as those used in the telecommunications industry." Complaint, filed March 26, 2002, at 3.

On April 16, 2002, the Ramsey Group amended its complaint to delete an allegation that the corporate status of Defendant EnviroGuard had been suspended by the California Secretary of State. Amended Complaint, filed April 16, 2002, at 2.

On May 28, 2002, Defendants sought and obtained an extension of time through July 3, 2002, within which to answer or otherwise respond to the complaint. On the same date, Defendants filed a "Statement of Non[-]assertion of U.S. Patent No. 6,308,728 B1" in which the Defendants announced that

> [s]ubject to all jurisdictional objections which are specifically preserved, Defendants ... inform the Court that Defendants do not and will not assert U.S. Patent No. 6,308,728 B1, the patent-in-suit, against [Ramsey Group] with respect to the Uni–Seal containment system or any of Ramsey's products that Ramsey currently sells.

Statement of Non[-]assertion of U.S. Patent No. 6,308,728 B1, filed May 28, 2002.[1]

■ On June 29, 2002, the Ramsey Group moved for leave to file a supplemental amended complaint which would add two defendants and another patent to its request for declaratory judgments of non-infringement and invalidity. The proposed complaint alleges in pertinent part:

> On May 28, 2002, Defendants Expo Power, Douglas Frazier and Kenneth Cotton filed a complaint against Ramsey Group in the United States District Court for the Central District of California ("the first California complaint"), with the caption *Expo Power Systems, Inc. d/b/a EGS International d/b/a/ Enviroguard, Douglas Frazier and Kenneth Cotton v. Ramsey Group, Inc.,* No. 02–CV–4212 (C.D.Cal.), alleging that Ramsey Group infringes the '417 patent[2] and seeking a declaratory judgment that the plaintiffs listed on the California complaint have not committed acts of unfair competition in violation of N.C. Gen. Stat. § 75–1.1, as alleged by Ramsey Group in the Complaint and Amended Complaint previously filed in the present litigation....
>
> On or about June 25, 2002, Defendants Expo Power, Douglas Frazier and Kenneth Cotton unilaterally dismissed the first California complaint with a Notice of Dismissal. Ramsey Group has not been served with the first California complaint....
>
> On June 25, 2002, Defendant Expo Power filed a new complaint against Ramsey Group in the United States District Court for the Central District of California ("the second California complaint"), with the caption *Expo Power Systems, Inc. v. Ramsey Group, Inc.,* No. 02–CV–5041 (C.D.Cal.), alleging only that Ramsey Group infringes the '417 patent....

Exhibit 1, Supplemental Amended Complaint, *attached to* Plaintiff's Motion for Leave to File Supplemental Amended Complaint and Motion to Preliminarily Enjoin Defendants from Pursuing Related California Action, filed June 29, 2002, ¶¶ 23–25.

---

1. The Federal Circuit has held that "a patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the puta-tive infringer ...." *Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1058 (Fed. Cir.1995).

2. United States Patent No. 6,395,417 B1 ('417).

Plaintiff Ramsey Group now seeks to add Expo Power Systems, Inc. (Expo) and Toni Frazier (Ms. Frazier) as Defendants in this action and to obtain a declaration that it does not infringe United States Patent No. 6,395,-417 B1 ('417). In the proposed supplemental complaint, it is alleged that Ms. Frazier, who resides at the same address as Douglas Frazier, is an officer and employee of Expo. *Id.*, ¶ 7. It is also alleged that Douglas Frazier is the inventor of the '417 patent as well as the '728 patent. *Id.*

Expo and Ms. Frazier have made a special appearance for purposes of the motion. They take no position concerning their being named as Defendants; however, they do oppose any relation back of the supplemental pleading to the date of original filing. It is admitted in their pleading that Expo owns the '417 patent, that Ms. Frazier is Expo's president, and that the California actions were initiated, dismissed and sued again as alleged by the Ramsey Group. Special Appearance by and Opposition of Non–Parties Expo Power Systems, Inc. and Toni Frazier to Plaintiff's Motions, filed July 16, 2002, at 1–2.

## II. STANDARD OF REVIEW FOR SUPPLEMENTAL PLEADINGS

Federal Rule of Civil Procedure 15 provides in pertinent part:

Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.

Fed.R.Civ.P. 15(d). The Fourth Circuit has noted that " '[s]o useful are [Rule 15(d) motions] and of such service in the efficient administration of justice that they ought to be allowed as a matter of course, unless some

particular reason for disallowing them appears.' " *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,* 174 F.Supp.2d 388, 395–96 (D.Md.2001) (quoting *New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 28–29 (4th Cir.1963)). Therefore, the Court considers first the appropriateness of allowing leave to supplement the complaint.

Rule 15(d) [ ] plainly permits supplemental amendments to cover events happening after suit, and it follows, of course, that persons participating in these new events may be added if necessary. Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and efficient administration of justice.

*Griffin v. County School Bd. of Prince Edward County,* 377 U.S. 218, 226, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964) (footnote omitted).

The allegations of the proposed supplemental complaint clearly relate to matters which occurred after the original and amended complaints were filed. *Star Scientific, supra.* By the admission of the collective Defendants, Expo does business as EGS International, Inc., which in turn does business as EnviroGuard. *See,* "First California Complaint" Caption. EnviroGuard has alleged in the past that the Ramsey Group is infringing the '728 patent which was invented by Frazier, EnviroGuard's majority shareholder. Amended Complaint. Frazier is also the inventor of the '417 patent for SPILL CONTAINMENT SYSTEMS WITH A FLEXIBLE CORROSION–RESISTANT LINER which Expo, the patent's owner, claims in the second California lawsuit is being infringed by the Ramsey Group. And Ms. Frazier, who is Douglas Frazier's wife, is the president of Expo. The supplemental allegations therefore involve the same parties and/or their alteregos. Indeed, "Expo does not dispute that a legitimate controversy exists between it and Ramsey in connection with Ramsey's infringement of Expo's '417 patent." [3] Special Appearance, at 3.

---

3. As such, there is little doubt that a counterclaim would be asserted in this action on the basis of the '417 patent. The "Statement of Non[-]Assertion" of the '728 patent which was

filed by the Defendants appears to have been an attempt to trump jurisdiction in this District because it was filed on the same date that the "first

Moreover, the Ramsey Group took care to name as Defendants the inventor of the '728 patent, the majority shareholder of the corporation at issue, and the president of that corporation, so that all parties, individual and corporate, could be subjected to any judgment which might be recovered. *See, e.g., Nelson v. Adams USA, Inc.*, 529 U.S. 460, 468, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000) ("[T]he plaintiff in *Fromson* had moved *before trial* to add the individual owners as parties, because it suspected from the start that the defendant corporation might not be able to pay.") (citing *Fromson v. Citiplate, Inc.*, 886 F.2d 1300, 1304 (Fed.Cir.1989)). Subsequent to the original complaint filed in this District, EGS, EnviroGuard, and its parent corporation Expo, along with the individuals Frazier and Cotton, sued the Ramsey Group in California alleging infringement of the '417 patent and unfair and deceptive trade practices pursuant to *North Carolina* law. Almost one month later, they dismissed that suit and on the same day filed a new one naming only Expo as the Plaintiff and deleting any claims pursuant to North Carolina law, a less than transparent attempt to avoid transfer to this District.[4] The Ramsey Group seeks to supplement the amended complaint in this Court to add these allegations, to include a claim concerning the '417 patent and to add Expo, the parent corporation, and Ms. Frazier, Expo's president.

"A supplemental pleading may . . . be used to add additional facts or events relating to liability or to change the relief requested. A party also may supplement a pleading under Rule 15(d) to add new parties when subsequent events make it necessary to do so." 3 *Moore's Federal Practice* § 15.30 (Matthew Bender 3d ed.) (footnote omitted). In determining whether leave to supplement is appropriate, the same standards are applied as those for motions for leave to amend. *Glatt*

*v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir.1996) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 608 n. 3 (4th Cir.1980)). Here, the motion has been made prior to any responsive pleading by the Defendants,[5] no discovery has occurred, a pretrial order and case management plan has not been entered, the parties to be added have admitted there is a meritorious dispute, and there is no prejudice to these parties because the litigation is in its infancy. *Id.; Intown Properties Mgmt., Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 170 (4th Cir.2001) (citing *Foman, supra*); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339 (Fed.Cir.2001) (Noting that a patentee's motion to add a new party made one year after the action began and two months after the pretrial order's deadline would be denied.). The undersigned therefore finds that supplementation is appropriate.

▪ Provided that the provisions of Rule 15(c) are met, supplemental pleadings may relate back to the date of the original filing. *Davis, supra.* That subsection provides in pertinent part:

> An amendment of a pleading relates back to the date of the original pleading when
>
> .    .    .    .    .
>
> (2) the claim . . . asserted in the [supplemental] pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading, or
>
> (3) the [supplementation] changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by [supplementation] (A) has received such notice of the institution of the action that the party will not be preju-

California action" was filed. *See, Super Sack, supra.*

4. Expo seeks a declaration that the "second California lawsuit" which is still pending is the "first-filed" suit involving the '417 patent. "[A]s between a patent infringement action and its mirror image declaratory judgment action, court favors the forum of the 'first-filed' action, regardless of whether it is the declaratory action."

*Mann Design Ltd. v. Bounce, Inc.*, 138 F.Supp.2d 1174, 1178 (D.Minn.2001) (citing *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937–38 (Fed.Cir. 1993)).

5. In fact, the Defendants have sought and obtained extensions within which to file responsive pleadings. Those extensions have been used to initiate the California actions.

diced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action action would have been brought against the party.

Fed.R.Civ.P. 15(c).

The Court first considers whether the allegations of proposed supplemental pleading arose out of the conduct, transaction or occurrence set forth in the amended complaint. Both Plaintiff and Defendants design, manufacture and market spill containment systems for use in stationary battery installations in order to prevent acid spilled from such installations from seeping into the environment. The '728 patent is described as

> [a] spill containment system and method that contain leaks and spills from devices including but not limited to batteries. The system neutralizes and absorbs leaks and spills to prevent the leaks and spills from spreading. The system not only detects leaks, but also indicates whether a leak has occurred. The system can communicate with personnel or devices to raise an alarm or cause corrective measures to occur.

Exhibit 2, *attached to* Plaintiff's Memorandum in Support of Motion.

The abstract for the '417 patent, which is a "continuation-in-part of ... Pat. No. 6,309,728," contains the identical description followed by additional information describing the device. Exhibit 1, attached to Memorandum. "A 'CIP' [continuation in part] application is a continuing application containing a portion or all of the disclosure of an earlier application together with added matter not present in that earlier application." *Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed.Cir.1994) (citing *The Manual of Patent Examining Procedure* § 201.08 (1988)). Both of the patents at issue are for designs for such systems and the collective Defendants, at one time or another, have claimed that the Ramsey Group is infringing or has infringed those patents. 3 *Moore's Federal Practice* § 15.19[2] (Factors supporting conclusion that claim arose out of the same conduct include whether the defendant had notice of the claim, whether the same evidence will be offered, and whether the defendant has been unfairly surprised.). The undersigned, therefore, finds that the claims in the supplemental pleadings concerning the '417 patent arise out of conduct, transactions or occurrences set forth in the original pleading. "While the action[ ] as originally filed related to [a] different patent[ ], the case[ ] involve[s] the same parties, [ ] the same products, and similar technology." *In re Medrad, Inc.*, 215 F.3d 1341 (table), 1999 WL 507359 *3 (Fed.Cir.1999) (Discussing the fact that amendment of the complaint created a relation between two pending patent cases and transferring the second filed action to the first forum.); *Mann Design*, 138 F.Supp.2d at 1178–79 ("[A] claim for the alleged infringement of one patent is the same 'conduct or occurrence' as a claim for the alleged infringement of another patent only where the second patent was 'part and parcel' of the controversy surrounding the earlier patent.... [T]he ... claims added by amendment and the original claim under the ['728] patent involve a common core of operative facts, [and] ... the same underlying evidence offered in support of the original claim will prove the new claim." (Citations omitted)).

Having concluded that subsection (2) of Rule 15(c) has been met, the supplemental amended complaint relates back to the date of filing of the original complaint, March 26, 2002. Expo, however, argues that Rule 15(c)(2) does not apply because the proposed supplemental complaint adds new parties and relation back in that case can only occur when the original complaint misnamed the parties, not when new parties are brought in. This argument is based on Rule 15(c)(3) which "applies only in cases involving a mistake concerning the identity of the proper party." *Nelson*, 529 U.S. at 467 n. 1, 120 S.Ct. 1579 (citations omitted). Expo loses under this subsection as well because the original complaint alleged that Enviro-Guard's corporate status had been suspended. Complaint, filed March 26, 2002, at 2. Although the amended complaint deleted this allegation, it now appears that the original concerns were accurate because the corporate status of EGS International, Inc., En-

viroGuard's parent corporation, has been voided for failure to pay taxes. Exhibit 5, Affidavit of Daryl Monteith, *attached to* Plaintiff's Memorandum in Support of Motion, ¶ 2. Expo is the parent corporation of EGS and thus is the proper extant corporate party. 3 *Moore's Federal Practice* § 15.19[3][c] ("Identity of interest is ... present ... when the original and added parties are a subsidiary corporation and a parent ...."). Since Ms. Frazier is the president of Expo and its agent for service, it was also proper to name her as a party. *Id.* ("Identity of interest is ... present ... when the two related corporations have substantially identical officers, directors, or shareholders and have similar names or share office space ...."). Defendants have not disputed that the other provisions of Rule 15(c)(3) have been met and thus, relation back is proper under this subsection as well.

### III. STANDARD OF REVIEW RELATING TO "FIRST FILED" ACTIONS

■ "[T]he Supreme Court explained in *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 185, 72 S.Ct. 219, 96 L.Ed. 200[ ] (1952), that if a manufacturer files a declaratory judgment suit first, subsequent infringement actions by the patentee against the manufacturer can within the trial court's discretion be enjoined pending determination of the declaratory judgment suit." *American Household Products, Inc. v. Evans Mfg., Inc.*, 139 F.Supp.2d 1235, 1240 (N.D.Ala. 2001). The Fourth Circuit has recognized the "first to file" rule and has given priority to the first suit in the absence of a showing that the balance of convenience sways in favor of the later filed suit. *The Learning Network, Inc. v. Discovery Communications, Inc.*, 11 Fed.Appx. 297, 300–301, 2001 WL 627618 *3 (4th Cir.2001). Defendants here do not argue the inconvenience of this forum. Their arguments are limited to the pending "second California action," which they claim is actually the first filed action due to their "non-assertion" statement as to the '728 pat-

ent, and a claim that there is no personal jurisdiction over Defendants EGS, Douglas Frazier and Joseph Cotton. Likewise, Defendants do not argue that this action lacks a real case or controversy.

Defendants' conduct belies their vague argument against the first-filed rule. This action was filed on March 26, 2002, after receipt approximately one week earlier of a "cease and desist" letter from the Defendants in which litigation was threatened. On May 28, 2002, Defendants obtained an extension of time within which to answer or move until July 3, 2002. *Id.*, at 299–300 ("Despite Discovery's apparent assurances that it would not 'sand-bag' Network, on or about January 22, 2001, Network's counsel was advised that Discovery had filed an action in the Southern District of New York [ ]."). On that same date, they filed a non-assertion statement concerning the '728 patent and initiated an action in California for infringement of the '417 patent in which EGS, Frazier and Cotton were named as Plaintiffs. However, between May 28, 2002 and June 25, 2002, when the Defendants voluntarily dismissed the first California action, they did not effect service of the California complaint on the Ramsey Group. *Id.* On the same date that the first California action was dismissed, a second action was filed in which only Expo was named as a Plaintiff and the claim based on North Carolina law was dropped.[6] "It has long been established that courts look with disfavor [ ]on races to the courthouse and forum shopping. Such procedural fencing is a factor that counsels against exercising jurisdiction over a declaratory judgment action. However, there can be no race to the courthouse when only one party is running." *Id.*, at 300–302. The only parties running in this action were the Defendants who were blatantly forum shopping.

In addition, this Court is bound to acknowledge " 'considerations of judicial and litigant economy and the just and effective disposition of disputes ....' " *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed.Cir.1995) (quoting *Genentech*, 998 F.2d at 937). While the California

---

6. The fact that the first suit was dismissed rather than amended to reflect a deletion of parties and

claims is equally telling of the Defendants' real motives.

action only implicates the '417 patent, it is a continuation-in-part patent from the parent '728 patent, thus implicating claim construction and prosecution history for both patents. *American Household Products, supra.* The parallel prosecution of actions involving the same patents, technologies, parties and facts would certainly be a waste of judicial resources and promote the possibility of inconsistent judgments. *In re Medrad, supra.* While defending this action in North Carolina will doubtless be inconvenient for the Defendants, the same would be true if the Plaintiff were required to defend itself in California. *Id.* The undersigned therefore concludes that, under the circumstances of this case, the first filed rule should be followed.

Nonetheless, this determination presents a procedural quandary. While the Fourth Circuit in *The Learning Network, Inc.* affirmed a district court which enjoined a party from proceeding with an action in New York, the undersigned remains loathe to tread on the jurisdiction of the United States District Court for the Central District of California. Moreover, Plaintiff has not addressed the factors supporting the granting of a preliminary injunction. *Id.,* at 299–300. It may well be that the California Court will decline to exercise its jurisdiction based on this Court's ruling as to the "first filed" action. In that event, a motion for a transfer of venue would be unnecessary. However, the undersigned is not at this juncture prepared to enjoin the Defendants from proceeding in that action.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion for leave to supplement the amended complaint is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the supplemental amended complaint attached as Exhibit 1 to the Plaintiff's motion is hereby deemed relate back to the date of filing of the original complaint, March 26, 2002.

**IT IS FURTHER ORDERED** that the Defendants shall have 15 days from service of this Order to answer, move or otherwise plead to the supplemental amended complaint.

**IT IS FURTHER ORDERED** that the Plaintiff's motion for preliminary injunction to enjoin *Expo Power Systems, Inc. v. Ramsey Group, Inc.,* Case No. 02–CV–5041 (C.D.Cal.), is hereby **DENIED WITHOUT PREJUDICE** to renewal.

**IT IS FURTHER ORDERED** that as between this action and *Expo Power Systems, Inc. v. Ramsey Group, Inc.,* Case No. 02–CV–5041 (C.D.Cal.), this action is hereby **DECLARED** the first filed action.

**IT IS FURTHER ORDERED** that the Plaintiff's motion for an extension of time within which to file a reply is hereby **DENIED** as moot.